THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CARLOS FRIAS, Defendant-Appellee.

Second District    No. 2—06—0654

Opinion filed July 23, 2009.

James P. Hursh, State's Attorney, of Belvidere (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien and R. Christopher White, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE BURKE delivered the opinion of the court:

Defendant, Carlos Frias, was driving to work with his girlfriend, Alma Rivera, who was the only passenger. A police officer stopped defendant for speeding, and defendant was arrested for offenses unrelated to this appeal. The arresting officer directed Rivera to exit the vehicle, and she did so, carrying her purse. After a search of the car disclosed nothing, the officer emptied Rivera's purse and found what appeared to be two fraudulent social security cards bearing the names "Carlos Frias" and "Carlos Frias Rabello." Defendant was charged with two counts of unlawful possession of a fraudulent identification card (15 ILCS 335/14B(b)(1) (West 2006)), based on the cards found in Rivera's purse.

Defendant moved to suppress the identification cards and quash the resulting arrest, arguing that by searching Rivera's purse the officer violated defendant's fourth amendment right against unreasonable searches and seizures. The trial court granted defendant's motion, concluding that (1) the purse was outside the car when the car was searched, and thus the purse could not be included as part of a lawful search of the vehicle's passenger compartment incident to arrest under *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), and (2) defendant had a legitimate expectation of privacy in the purse, and thus could challenge the search, because he and Rivera were in a close relationship and defendant had entrusted the cards to her.

Following an unsuccessful motion to reconsider, the State appeals. The State argues that (1) the purse was subject to a lawful search incident to arrest because it was inside or at least near the passenger compartment of the car around the time of the arrest, and (2) regardless of whether the search violated Rivera's rights, defendant lacks standing to challenge the search, because he had no legitimate expectation of privacy in the purse. We hold that, under the recent decision announced in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009), the search of the purse was not a lawful search incident to defendant's arrest; however, the suppression order must be reversed because defendant did not have a legitimate expectation of privacy in the purse.

## FACTS

Only Rivera and the arresting officer, Belvidere police officer David Bird, testified at the hearing on defendant's motion to suppress the identification cards and quash the arrest. Many of the facts are undisputed. At about 11 a.m. on September 28, 2005, Officer Bird stopped defendant for speeding. Rivera, the car's only other occupant, was riding in the front seat. Rivera testified that she was holding her purse on her lap. Officer Bird asked defendant for his driver's license and proof of insurance. Defendant stated his name and date of birth and produced an invalid insurance card. Officer Bird asked Rivera her name, and she identified herself verbally also.

English is not the first language of defendant or Rivera. Rivera testified that defendant asked in Spanish why Officer Bird stopped him, and the officer said "40 kilometer." Officer Bird testified that he can speak Spanish "a little bit," but he could not recall whether he used Spanish when speaking to defendant. Officer Bird was certain that he told defendant the basis for the stop.

Officer Bird went to his squad car to check the status of defendant's driving privileges and determined that defendant's license had been suspended and that defendant had an outstanding arrest warrant. Officer Bird returned to defendant's vehicle, opened the driver's door, pulled defendant from his seat, handcuffed him, and placed him in the back of the squad car. Rivera testified that the officer then gestured for her to exit the vehicle. Rivera testified that the officer spoke only in English and that she did not understand what he said. Officer Bird testified that he believed Rivera could understand him.

Rivera testified that, when she exited the vehicle, she moved the purse from her lap to her right shoulder. Rivera stated that the officer "snatched" the purse without asking, dumped its contents on the trunk lid of defendant's car, and began rummaging through them. Of-

ficer Bird denied snatching the purse. He testified that Rivera had placed the purse on the trunk lid and that he used Spanish to obtain her permission to search the purse. Officer Bird recalled that he searched the purse after finding nothing in the car's passenger compartment. At the hearing, Rivera repeatedly denied consenting to the search of her purse. She testified that the officer told her in Spanish that he was looking for weapons and drugs.

Officer Bird discovered a small wallet in Rivera's purse, and the credit card slots of the wallet contained the two social security identification cards on which the charges against defendant are based. Officer Bird testified that Rivera said that the cards belonged to defendant.

The trial court found that Officer Bird had valid grounds to stop the car, investigate defendant's driving privileges, and arrest defendant based on his suspended license and the outstanding warrant. The court further found that Officer Bird lawfully searched the vehicle incident to the arrest. However, the court found that Rivera had not consented to the search of her purse. The court suppressed the evidence and quashed the resulting arrest. The court concluded that Officer Bird violated the fourth amendment in searching the purse, because it was outside the car during the search of the passenger compartment. The court further concluded that defendant had a legitimate expectation of privacy in Rivera's purse because defendant and Rivera "were intimately involved as boyfriend-girlfriend and that [d]efendant entrusted personal (although fraudulent) information to his girlfriend to keep in her purse, [an] area of high privacy."

The State moved to reconsider the suppression order, reiterating the argument that defendant lacked a legitimate expectation of privacy in the purse. The court denied the motion, citing its previous reasons. The State filed a certificate of impairment, and this appeal followed.

## ANALYSIS

### A. Jurisdiction

■ In this case, the trial court entered its memorandum of decision on May 8, 2006, and the State filed a motion to reconsider the interlocutory order on May 24, 2006. The court denied the motion to reconsider on June 13, 2006. The court's consideration of the motion delayed the State's filing of its notice of appeal until July 3, 2006, which was more than 30 days after the entry of the interlocutory order. Presented with similar facts, our supreme court recently held in *People v. Marker*, 233 Ill. 2d 158 (2009), that, when a trial court grants a motion to suppress evidence, the State's timely filed motion to reconsider tolls the 30-day period for filing a notice of appeal. Under

the supreme court's holding in *Marker*, we have jurisdiction to consider the State's appeal in this case.

## B. Standard of Review

In moving to suppress the social security cards and to quash the arrest, defendant had the initial burden of proving that the search and seizure were unlawful. See 725 ILCS 5/114—12(b) (West 2006). "However, once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion." *People v. Ortiz*, 317 Ill. App. 3d 212, 220 (2000). The trial court's finding that Rivera did not consent to the search was central to the court's implicit conclusion that the State failed to meet its burden of showing that the intrusion was justified. Also, defendant bears the burden of proving that he had a legitimate expectation of privacy in Rivera's purse. *People v. Rosenberg*, 213 Ill. 2d 69, 78 (2004), citing *Rawlings v. Kentucky*, 448 U.S. 98, 104, 65 L. Ed. 2d 633, 641, 100 S. Ct. 2556, 2561 (1980).

In reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of review adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Under this standard, a trial court's findings of historical fact should be reviewed only for clear error, and a reviewing court must give due weight to any inferences drawn from those facts by the fact finder. *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663; *Luedemann*, 222 Ill. 2d at 542. In other words, we give great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542, citing *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). We review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663; *Luedemann*, 222 Ill. 2d at 542-43.

■ In this case, the only disputed factual question is whether Rivera consented to the search of the purse. The trial court found Rivera to be credible and found that she did not consent. We give great deference to the court's finding and conclude that it is not against the manifest weight of the evidence. We review *de novo* the ultimate question of whether suppression is warranted.

## C. Search Incident to Arrest

This case presents the issue of whether an arrested occupant of a vehicle has a fourth amendment right to suppress the contents of a container that was searched without a warrant and without consent

after a nonarrested occupant of the vehicle removed the container from the passenger compartment during the traffic stop. The State argues that Officer Bird's search of Rivera's purse was lawful as incident to defendant's arrest.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The search and seizure provision of section 6 of article I of the Illinois Constitution is construed consistently with the United States Supreme Court's interpretation of the fourth amendment. Ill. Const. 1970, art. I, §6; *People v. Gonzalez*, 204 Ill. 2d 220, 224 (2003).

■ In 1969, the United States Supreme Court held that the fourth amendment permits a police officer to search, as incident to a lawful arrest, the arrestee's person and the area within his immediate control. *Chimel v. California*, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040 (1969). In 1981, the Court applied *Chimel* to automobile searches and created the well-known, bright-line rule that, when an occupant of an automobile is arrested, the search incident to arrest may extend to the passenger compartment of the vehicle and any containers therein. *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864.

Illinois, like many other jurisdictions, expanded the rule enunciated in *Belton* to allow an officer to search the passenger compartment of an automobile as incident to arrest even after the arrestee has been handcuffed and placed in the squad car. See *People v. Bailey*, 159 Ill. 2d 498, 506 (1994); *People v. Kalivas*, 207 Ill. App. 3d 415, 417-18 (1991). Recently, the Supreme Court rejected this expanded reading of *Belton* and held that police are authorized to search a vehicle incident to a recent occupant's arrest only while the arrestee is unsecured and within reaching distance of the passenger compartment. *Gant*, 556 U.S. at 343, 173 L. Ed. 2d at 495, 129 S. Ct. at 1719.

In the present case, Officer Bird testified that he handcuffed defendant and placed him in the squad car before searching the vehicle or Rivera's purse. Defendant does not dispute this portion of Officer Bird's account of the events. Under *Gant*, the searches conducted in this case purportedly as incident to defendant's arrest were improper for violating the fourth amendment and, thus, we reject the State's assertion that the searches were lawful under *Belton*. See *People v. Caballes*, 221 Ill. 2d 282, 313 (2006) (reaffirming Illinois's limited lockstep following of the United States Supreme Court on fourth amendment issues).

## D. Defendant's Expectation of Privacy

Our analysis does not end with the conclusion that the search of the purse was not lawful as incident to defendant's arrest. Defendant bears the burden of proving not only that the search of the purse was illegal, but also that he had a legitimate expectation of privacy in that purse. See *Rawlings*, 448 U.S. at 104, 65 L. Ed. 2d at 641, 100 S. Ct. at 2561.

The State argues that the suppression order must be reversed because defendant lacks "standing" to challenge the search of Rivera's purse. However, our supreme court, in line with Supreme Court precedent, has dispensed with the rubric of "standing" when analyzing fourth amendment claims. *People v. Sutherland*, 223 Ill. 2d 187, 229-30 (2006); *People v. Pitman*, 211 Ill. 2d 502, 521 (2004), citing *Minnesota v. Carter*, 525 U.S. 83, 87-88, 142 L. Ed. 2d 373, 379, 119 S. Ct. 469, 472 (1998); see also *Rakas v. Illinois*, 439 U.S. 128, 138-40, 58 L. Ed. 2d 387, 398-99, 99 S. Ct. 421, 427-29 (1978). Instead, a defendant who objects to the search of a particular area must prove a "legitimate expectation of privacy" in the area searched. *Rawlings*, 448 U.S. at 104, 65 L. Ed. 2d at 641, 100 S. Ct. at 2561 (suppression of drugs found in an acquaintance's purse was denied because the petitioner could not prove that search of the purse was "illegal" and that petitioner had a "legitimate expectation of privacy in that purse"); *Sutherland*, 223 Ill. 2d at 230; *People v. Carodine*, 374 Ill. App. 3d 16, 22 (2007).

■ The supreme court has identified several factors to be considered in determining whether a defendant has a legitimate expectation of privacy in the place searched or the property seized: (1) property ownership, (2) whether the defendant was legitimately present in the area searched, (3) the defendant's possessory interest in the area searched or the property seized, (4) prior use of the area searched or the property seized, (5) ability to control or exclude others' use of the property, and (6) a subjective expectation of privacy in the property. *Sutherland*, 223 Ill. 2d at 230; *Rosenberg*, 213 Ill. 2d at 78. The question of whether a defendant has a legitimate expectation of privacy that confers fourth amendment protection is answered in light of the totality of the circumstances of the particular case. *Rosenberg*, 213 Ill. 2d at 78.

■ Our consideration of the factors leads us to conclude that defendant lacked a legitimate expectation of privacy in the purse. Defendant presented no evidence that he had any ownership or possessory interest in the purse. Rivera testified that she owned the purse and that only she held it. Rivera held the purse on her lap while she was seated in the car, and when the officer motioned for her to exit

the vehicle, she placed the purse on her right shoulder. Likewise, no evidence was adduced that defendant had ever used the purse in the past.

The trial court inferred that defendant had an expectation of privacy in Rivera's purse because he entrusted his personal items to her, as his girlfriend, to keep in the purse. While the record shows that defendant was Rivera's boyfriend and that they were residing together, the record does not show that defendant gave Rivera the social security cards with the understanding that she would conceal them in her purse. The trial court found that defendant could reasonably expect that Rivera would prevent the public from having access to her purse, but nothing in the record supports the inference that defendant intended or had the ability to control Rivera's disclosure of the contents of the purse. Furthermore, defendant presented no evidence of his subjective expectation of privacy even though he could have so testified at the suppression hearing without the fear that his testimony would later be used to convict him. See *Rosenberg*, 213 Ill. 2d at 79.

The only fact tending to establish defendant's legitimate expectation of privacy in the purse was his relationship with the purse's owner. The trial court relied on their intimate boyfriend-girlfriend relationship to distinguish this case from *Rawlings*. In *Rawlings*, the defendant challenged the search of an acquaintance's purse in which he had previously placed contraband. The court held that he did not have a legitimate expectation of privacy in the purse, because he had known the acquaintance for only a few days; he had never sought or received access to the purse; and he had no right to exclude other persons from access to the purse. *Rawlings*, 448 U.S. at 104, 65 L. Ed. 2d at 641, 100 S. Ct. at 2561. Although there is no evidence in the record regarding the length of time defendant and Rivera had known each other, their relationship admittedly appears to be more intimate than the one in *Rawlings*. But the nature of their relationship, standing alone, does not automatically grant defendant a legitimate expectation of privacy in Rivera's personal belongings. We conclude that, in the absence of a legitimate expectation of privacy in Rivera's purse, defendant is not entitled to a suppression of its contents. Therefore, the trial court's suppression of the allegedly fraudulent social security cards must be reversed.

For the preceding reasons, the order of the circuit court of Boone County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and JORGENSEN, JJ., concur.